# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAZEN HINDI,<br><br>                                    Plaintiff,<br>vs.<br>EXXONMOBIL OIL CORPORATION, a<br>New York Corporation and DOES 1 - 100,<br>Inclusive,<br><br>                                    Defendants. | CASE NO. 07-cv-1664 WQH (LSP)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the motion for summary judgment (Doc. # 15) or, in the alternative, for summary adjudication of claims or defenses filed by Defendant ExxonMobil Corporation.

## PROCEDURAL BACKGROUND

On August 6, 2007, Plaintiff Mazen Hindi filed a complaint against Defendant ExxonMobil Corporation in the California State Superior Court in San Diego, California. (Doc. # 15-3). On August 22, 2007, ExxonMobil removed the case to this Court pursuant to 28 U.S.C. §§ 1332 & 1441(b). (Doc. # 1). On June 18, 2008 ExxonMobil filed a motion for summary judgment or in the alternative for summary adjudication on claims or defenses. (Doc. # 15). On August 6, 2008, Hindi filed a response in opposition to ExxonMobil's motion for summary judgment. (Doc. # 22). On August 11, 2008, ExxonMobil filed a reply in support of the motion for summary

judgment. (Doc. # 24).

**FACTUAL BACKGROUND**

Plaintiff Hindi has operated a gasoline service station as a franchisee of Defendant ExxonMobil since 1995. (Hindi Deposition, Doc. # 15-5, Ex. A at 8, 11). Hindi leases the station premises, located at 902 Third Avenue, Chula Vista, California, from ExxonMobil. (Id. at 8, 11-12). On March 8, 2004, a field retail coordinator of ExxonMobil sent Hindi a written letter informing Hindi that if he "continue[d] to have interest in purchasing your location please write us a letter and we be [sic] happy to entertain the request. Subject to management approval I believe such a request would receive favorable attention at this point in time." (Doc. # 22-3, Ex. 2). On March 9, 2004, Hindi sent a letter to ExxonMobil to "show my intent to purchase the property at my location, 902 third ave in the city of Chula Vista." (Doc. # 15-6, Ex. B-1); (Doc. # 22-4, Ex. 3).

On March 21, 2004, ExxonMobil sent an offer via certified mail to Hindi to sell the land, building, and all equipment described on Exhibits A and B to the attachment Terms and Conditions of Sale contract . . . for $742,538.00 subject to the terms and conditions set forth in the Contract." (Doc. # 15-6, Ex. B); (Doc. # 22-5, Ex. 4). The offer stated that "a certified or cashier's check payable to ExxonMobil Corporation in the amount of $37,126.90 must accompany your written acceptance of this offer and will be applied toward the full purchase price at the time of closing." (Doc. # 15-6, Ex. B); (Doc. # 22-5, Ex. 4). The offer stated that it would "expire at 12 noon on June 20, 2004 . . ." (Doc. # 15-6, Ex. B); (Doc. # 22-5, Ex. 4).

On June 7, 2008, ExxonMobil sent a notice to Hindi via express mail stating, "ExxonMobil has not received from you an acceptance of the offer or the earnest money. The purpose of this notice is to inform you [Hindi] that ExxonMobil hereby rescinds the offer effective immediately." (Doc. # 15-6, Ex. B); (Doc. # 22-7, Ex. 6). Hindi received the notice of rescission in the mail on June 8, 2004. (Doc. # 15-5, Ex. A at 43-44). On June 8, 2004, before receiving the notice from ExxonMobil, Hindi sent a certified check for $37,126.90 and letter of acceptance to ExxonMobil via express mail. (Doc. # 15-5, Ex. A at 63); (Doc. # 15-6, Ex. B); (Doc. # 22-20, Ex. 19). ExxonMobil received the check and letter of acceptance in the mail on June 9, 2004. (Doc. # 15-6,

1  Ex. B-9); (Doc. # 22-20, Ex. 19). On June 16, 2004, ExxonMobil returned Hindi's deposit check
2  via express mail. (Doc. # 22-21, Ex. 20). Hindi deposited the check into his bank account. (Doc.
3  # 15-5, Ex. A at 189).

4  Hindi testified at his deposition that immediately after reading the notice of rescission on
5  June 8, 2004, he called an ExxonMobil representative and "asked him regarding the letter if he
6  knew anything about it. He said no, he will find out." (Doc. # 15-5, Ex. A at 47). Hindi testified
7  that a "week or two later" the representative called Hindi and said "yeah, they're stopping the
8  offer, and it's an environmental issue." (Doc. # 15-5, Ex. A at 47).

9  ExxonMobil and Hindi had continuing contacts regarding the status of the property and a
10 forthcoming contract throughout 2005 and 2006. Ultimately, the parties were unable to negotiate a
11 contract for the sale of the station premises and equipment. Hindi has operated the gas station
12 throughout the attempted negotiations and continues its operation to date. (Doc. # 15-5, Ex. A at
13 8).

14 On August 6, 2007, Hindi filed the complaint in this case against Defendant ExxonMobil
15 alleging (1) breach of contract, (2) fraud, (3) breach of the covenant of good faith and fair dealing,
16 (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress.
17 (Complaint, Doc. # 15-3). Hindi seeks compensatory, incidental and punitive damages; specific
18 performance or imposition of a constructive trust ordering transfer of the station premises
19 according to the terms of the original contract; and reasonable attorneys' fees. (*Id*. ¶ 47).

20 **STANDARD OF REVIEW**

21 Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,
22 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
23 any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.
24 Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact
25 finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
26 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. The party moving
27 for summary judgment bears the initial burden of identifying those portions of the pleadings,
28 discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See*

1 *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden
2 in two ways: (1) by presenting evidence that negates an essential element of the nonmoving
3 party's
4 case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to
5 establish an element essential to that party's case on which that party will bear the burden of proof
6 at trial. *Id*. at 322-23.

7 Once the moving party meets its initial burden, the non-moving party must go beyond the
8 pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue
9 for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must
10 "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v.*
11 *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "In considering a motion for summary judgment, the
12 court may not weigh the evidence or make credibility determinations, and is required to draw all
13 inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732,
14 735 (9th Cir. 1997).

15 In ruling on a motion for summary judgment, "[t]he district court may limit its review to
16 the documents submitted for purposes of summary judgment and those parts of the record
17 specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030
18 (9th Cir. 2001). The court must view all inferences drawn from the underlying facts in the light
19 most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
20 475 U.S. 574, 587 (1986). "Credibility determinations [and] the weighing of evidence . . . are jury
21 functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."
22 *Anderson*, 477 U.S. at 255.

23 **DISCUSSION**

24 **I. Breach of Contract**

25 ExxonMobil contends that it is entitled to summary judgment on Hindi's claim for breach
26 of contract because a valid contract was never created. ExxonMobil asserts that there was no
27 mutual consent between the parties to enter into a contract. ExxonMobil contends the May 21,
28 2004 offer was properly revoked on June 7, 2004, before Hindi accepted the offer on June 8, 2004.

1  ExxonMobil asserts that "even if this Court were to conclude Hindi had accepted the offer before
2  it was revoked, ExxonMobil still could not have been found to breach a contract . . . since it
3  rescinded its offer based upon environmental issues at the site." (Mot. for Summary J., p. 11).
4  ExxonMobil contends that the offer was subject to the condition precedent of an acceptable
5  environmental assessment and "since there were ongoing environmental issues at the property
6  preventing acceptance of an environmental assessment, ExxonMobil had the right to in good faith
7  exercise its option to terminate the deal." (*Id*. at 11-12).

8  Hindi contends that a valid contract was formed when he sent his acceptance to
9  ExxonMobil on June 8, 2004. Hindi contends that ExxonMobil's notice of rescission sent on June
10 7, 2004 was ineffective. Hindi asserts that the May 21, 2004 offer was an option supported by
11 consideration in the form of promissory estoppel and could not be terminated prior to June 20,
12 2004. Hindi contends that ExxonMobil should reasonably have expected that Hindi would expend
13 "substantial time and incurred expenses in reasonable and detrimental reliance upon Defendant's
14 offer by . . . secur[ing] a substantial loan of $652,200.00 and a line of credit on his residence for
15 another $200,000.00." (Resp. in Opp'n, p. 10). Hindi asserts that his "detrimental reliance" on
16 ExxonMobil's offer entitles him to specific performance of the terms of the offer because he has a
17 valid claim under a theory of promissory estoppel. Hindi contends that the doctrine of promissory
18 estoppel operates as consideration in exchange for an option, i.e., a promise to keep the offer open
19 until June 20, 2004.

20 Under California law,[1] the elements of a cause of action for breach of contract are: (1) the
21 existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's
22 breach; and (4) damages resulting to plaintiff because of the breach. *See Armstrong Petroleum*
23 *Corp. v. Tri-Valley Oil and Gas Co*., 116 Cal. App. 4th 1375, 1391 (Cal. Ct. App. 2004). In order
24 to determine whether Hindi has a valid claim for breach of contract, the Court must first determine
25 whether a contract for the sale of the station premises was formed between Hindi and ExxonMobil.
26 Where material facts are not in dispute, whether a contract exists is properly decided on summary

---

[1] ExxonMobil removed the case to this Court on the basis of diversity jurisdiction. 28 U.S.C.
28 § 1332. The Court, therefore, applies California law to Hindi's claims, all of which are brought under
California law. *Hayward v. Centennial Ins. Co*., 430 F.3d 989, 991 (9th Cir. 2005).

1  judgment. *City Solutions v. Clear Channel Communications*, 201 F. Supp. 2d 1035, 1039 (9th Cir.
2  2002).

3  California law requires four elements to form a valid contract: (1) the parties' capacity to
4  contract; (2) the parties' mutual consent; (3) a lawful object; and (4) sufficient consideration. CA.
5  CIV. CODE § 1550. An offer may be revoked, thus vitiating mutual consent, at any time before its
6  acceptance is communicated to the offeror. CA. CIV. CODE § 1586. Revocation of an offer is
7  deemed effective "when notice of the revocation is communicated to the offeree before the
8  offeree's acceptance can be communicated to the offeror. Both revocation and acceptance can be
9  communicated by any usual and reasonable mode and notice of revocation or acceptance is
10 complete when placed in the course of transmission to the recipient." *Ersa Grae Co. v. Fluor Co.*,
11 (1991) 1 Cal. App. 4th 613, 621 at n.2 (Cal. Ct. App. 1991); CA. CIV. CODE § 1587.

12 It is undisputed that ExxonMobil placed a notice of revocation in the course of
13 transmission to Hindi via express mail on June 7, 2004. Hindi contends that the offer by
14 ExxonMobil is nonetheless enforceable as a binding contract under a promissory estoppel theory.
15 Under the doctrine of promissory estoppel, an offer is treated as a binding option contract (i.e., an
16 irrevocable offer) if the offeror should have reasonably expected that the offer would "induce
17 action or forbearance of a substantial character on the part of the offeree before acceptance and
18 which does induce such action or forbearance." Restatement (Second) of Contracts § 87(2);
19 *Drennan v. Star Paving Co.,* 51 Cal. 2d 409, 413 (Cal. 1958). The doctrine is applied by the
20 courts only "to the extent necessary to avoid injustice." *Poway Royal Mobilehome Owners Assn. v.*
21 *City of Poway*, 149 Cal. App. 4th 1460, 1470-71 (Cal. Ct. App. 2007). To establish an enforceable
22 option contract on a promissory estoppel theory, Hindi must meet four requirements: "(1) a clear
23 promise; (2) reliance; (3) substantial detriment; and (4) damages measured by the extent of the
24 obligation assumed and not performed." *Id.*

25 In this case, Hindi asserts that ExxonMobil made a clear promise to Hindi that ExxonMobil
26 would keep the offer to sell the station premises open until June 20, 2004 with the statement that
27 the offer would "expire at 12 noon on June 20, 2004." (Doc. # 15-6, Ex. B); (Doc. # 22-5, Ex. 4).
28 Hindi asserts that this statement by ExxonMobil implied that the offer would *remain open* until

1  June 20, 2004.[2] However, "the fact that inferences might be drawn from these representations
2  does not transform them into an enforceable promise." *Aguilar v. International Longshoremen's*
3  *Union Local # 10*, 966 F.2d 443, 446 (9th Cir. 1992). "To be enforceable under a theory of
4  promissory estoppel, the promise must be 'clear and unambiguous.'" *Id*. (citing *Laks v. Coast Fed.*
5  *Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (Cal. Ct. App. 1976)). The Court finds that no
6  reasonable finder of fact could conclude that the statement by ExxonMobil that the offer would
7  expire on June 20, 2004 constituted a clear promise that the offer would remain open until June 20,
8  2004. The only promise made by ExxonMobil was that the offer would expire on that date. There
9  are no facts to support a clear promise by ExxonMobil that the otherwise revocable offer would
10 remain open until its expiration date, and to rely on an inference to the contrary, is neither
11 reasonable nor foreseeable. *See Aguilar*, 966 F.2d at 446 (concluding that because the purported
12 promise was not specific and clear, any reliance on it was unreasonable and unforeseeable.)

13  In this case, there are no facts which could support a finding of reasonable and foreseeable
14 reliance on a clear and definite promise. Hindi can not employ the doctrine of promissory estoppel
15 to substitute for the necessary elements of an enforceable contract. An offer is generally freely
16 revocable and is deemed effective upon being placed in the course of transmission. CA. CIV. CODE
17 § 1586, 1587. The Court finds that ExxonMobil validly revoked its offer to Hindi on June 7, 2004,
18 and that ExxonMobil is entitled to summary judgment on Hindi's breach of contract claim.

19 **II. Breach of Implied Covenant of Good Faith and Fair Dealing**

20  Hindi contends that ExxonMobil's May 21, 2004 offer[3] to sell the station premises
21 "contained an implied covenant of good faith and fair dealing that EXXON would not do anything
22 that would deprive Plaintiff of the benefits of said agreement, and to do everything that said
23 written agreement presupposed EXXON would do to accomplish the purposes of said written
24 agreement." (Resp. in Opp'n, p. 14). Under California law, every contract "imposes upon each
25 party a duty of good faith and fair dealing in its performance and its enforcement." Restatement

---

[2] *See* Hindi Decl. ¶ 8. "The stated reason for EXXON's notice of recision was that EXXON had not received acceptance or the earnest money as of June 7, 2004, despite the fact that I had been given until June 20, 2004 to send those items." (*Id*.)

[3] In his complaint, Hindi refers to the May 21 offer as the "written agreement."

1  (Second) of Contracts § 205.   The covenant of good faith and fair dealing is implied "to prevent
2  one contracting party from unfairly frustrating the other party's right to receive *the benefits of the*
3  *agreement actually made*."  *Guz v. Bechtel Nat'l. Inc*., 24 Cal. 4th 317 (Cal. 2000) (emphasis in
4  original).  In this case, no contract was ever formed to impose a duty to perform in good faith.
5  Accordingly, ExxonMobil cannot be liable for breach of the implied covenant of good faith and
6  fair dealing.

**III.  Claim for Fraud**

8  Hindi asserts that ExxonMobil representatives "intentionally and maliciously made false
9  representations to Plaintiff that it would sell the real estate pursuant to the terms and conditions set
10 forth in its offer to Plaintiff and concealed material facts."  (Resp. in Opp'n, p. 13.)  In support of
11 this assertion, Hindi contends that ExxonMobil representatives promised orally and in writing "to
12 sell the real estate to Plaintiff at the price originally quoted in May 21, 2004."  (*Id*.)  Hindi also
13 contends that ExxonMobil "intentionally and falsely represented to Plaintiff that all of the
14 environmental issues had been resolved, when in fact, no one had even inspected the monitoring
15 equipment for several months."  (*Id*.)

16 ExxonMobil does not dispute that there were a number of oral and written communications
17 between Hindi and ExxonMobil representatives between 2004 and 2006.  ExxonMobil contends
18 that "there is no evidence that representatives of ExxonMobil made representations of fact that
19 were false, knowing they were false, and intending to deceive Hindi."  (Mot. for Summ. J., p. 15.)

20 In order to "prevail on a claim for fraud, a plaintiff must show: (1) misrepresentations; (2)
21 knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage."
22 *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 982 (9th Cir. 1999).  "Only *fraudulent*
23 representations are included; . . . there must be 'scienter' - an  intentional, conscious
24 misrepresentation."  *Hale v. George A. Hormel & Co*., 48 Cal. App.3d 73, 82 (Cal. Ct. App. 1975)
25 (emphasis in original).  Upon viewing the facts in the light most favorable to the plaintiff, the
26 Court finds no evidence that ExxonMobil made any representation to Hindi that it would sell the
27 property to Hindi at the same price as the May 21, 2004 offer.  Hindi has not presented evidence
28 that ExxonMobil told him that "all the environmental issues had been resolved."  (Resp. in Opp'n,

p. 13.) In sum, Hindi has not set forth facts sufficient for a reasonable trier of fact to conclude that ExxonMobil made intentional and conscious misrepresentations with an intent to deceive Hindi. Accordingly, the Court grants ExxonMobil's motion for summary judgment on Hindi's fraud claim.

**IV. Intentional Infliction of Emotional Distress**

Hindi contends that ExxonMobil is liable for intentional infliction of emotional distress (IIED). The elements of a claim for IIED are (1) extreme and outrageous conduct by the Defendant, (2) intent by the defendant to cause severe emotional distress or reckless conduct likely to cause severe emotional distress, (3) causation, and (4) severe emotional distress suffered by the Plaintiff. *Cervantes v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (Cal. 1979). "Summary judgment is proper if a claim cannot 'reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Schneider v. TRW, Inc*., 938 F.2d 986, 992 (9th Cir. 1990); (citing *Trerice v. Blue Cross*, 209 Cal. App. 3d 878, 883 (Cal. Ct. App. 1989)). "Conduct, to be 'outrageous,' must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.*

According to Hindi, ExxonMobil's outrageous conduct included its revoking of the May 21, 2004 offer, frequent misrepresentations that the same offer/contract was forthcoming, and "putting Plaintiff on a prepaid payment status in anticipation of his account termination scheduled for April 30, 2006." (Resp. in Opp'n, p. 14). Hindi contends that as a result of ExxonMobil's conduct, he suffered lost business opportunities and severe emotional distress. Viewing the evidence in the light most favorable to the plaintiff, the Court finds that Hindi has not set forth facts sufficient for a reasonable trier of fact to conclude ExxonMobil's actions were "outrageous" and exceeding "all bounds usually tolerated by a decent society." Accordingly, the Court grants summary judgment in favor of ExxonMobil on Hindi's intentional infliction of emotional distress claim.

**V. Negligently Inflicted Emotional Distress**

The traditional elements of negligence apply to actions for negligent infliction of emotional distress (NIED), that is, duty, breach, causation, and damages. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc*. 48 Cal.3d 583, 590 (Cal. 1989). Damages for NIED are recoverable "when

they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id*. "Generally, there is no duty to avoid negligently causing emotional distress to another. Therefore, unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. A legal duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Hergenroeder v. Travelers Prop. Cas. Ins. Co.*, 249 F.R.D. 595, 623 (E.D. Cal. 2008).

Hindi claims that ExxonMobil breached its duty "to deal with Plaintiff in good faith," which caused him lost business opportunities and emotional distress. (Compl. ¶ 45). In support of this claim, Hindi contends that the duty arose out of both the franchiser-franchisee relationship between the parties and the "written agreement" that ExxonMobil entered into with Hindi. Under California law however, "a preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff." *Erlich v. Menezes*, 21 Cal. 4th 543, 554 (Cal. 1999); *see Mercado v. Leong*, 43 Cal. App. 4th 317, 324 (Cal. Ct. App. 1996) (emotional distress damages are unlikely when the interests affected are merely economic); *Camenisch v. Superior Court,* 44 Cal. App. 4th 1689, 1691 (Cal. Ct. App. 1996) (emotional distress damages are not recoverable when attorney malpractice leads only to economic loss). After reviewing the facts in the light most favorable to Plaintiff, the Court concludes that Hindi's claims of emotional distress arise out of only economic losses. Accordingly, the Court grants summary judgment in favor of Defendants as to Plaintiff's negligence claim.

## CONCLUSION

It is hereby ordered that Defendant ExxonMobil's motion for summary judgment (Doc. # 15-2) is GRANTED in its entirety. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.

DATED: September 10, 2008

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge